**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-01318-NYW

ALL PLASTIC, INC.,

    Plaintiff,

v.

SAMDAN LLC, d/b/a Smokus Focus, d/b/a Smokusfocus.com,
SAMUEL WHETSEL, individually and as a member of SamDan LLC, and
DANIEL RUSSELL-EINHORN, individually and as a member of SamDan LLC,

    Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

This civil action is before the court on Defendants Samuel Whetsel and Daniel Russell-Einhorn's (collectively, "Individual Defendants") "Motion to Dismiss Claim Asserted Against Defendants Whetsel and Russell-Einhorn in the First Amended Complaint" ("Second Motion to Dismiss") [#26, filed August 10, 2020]. The court considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Referral dated August 10, 2020 [#24].

This court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, having carefully reviewed the Motion and associated briefing [#37, #38], the docket, and applicable law, this court **DENIES** the Individual Defendants' Second Motion to Dismiss.

**BACKGROUND**

The court draws the following facts from the operative Amended Complaint [#20] and presumes they are true for purposes of the instant Second Motion to Dismiss.

All Plastic contends it is a leading manufacturer of premium displays and containers for medicinal and recreational cannabis dispensaries. [#20 at ¶ 19]. Its products are sold to dispensaries in 23 states, Washington, D.C., Puerto Rico, Canada, and the Netherlands. [*Id.*]. All Plastic currently owns ten United States patents for the containers and displays it manufactures, including the patent underlying the instant action, U.S. Patent No. 10,384,834 (the "'834 Patent") titled "Container for Providing Aromatic Sampling and Visualization of Contents." [*Id.* at ¶¶ 20, 21]. The '834 Patent was issued to William Thomas Smith and Cheryl Ann Smith (the "Smiths") on August 20, 2019, and the Smiths subsequently assigned the '834 Patent to All Plastic. [*Id.* at ¶ 21].

The '834 Patent claims embodiments of a container that has a body and a lid that, when fitted together, form a sealed chamber. [*Id.* at ¶ 24]. The lid has a "viewing opening" coverable by a lens affixed thereto. [*Id.*]. Within the lid are multiple scent openings, coverable by a removable plug. [*Id.*]. Products that include features of the Patent are marked to reflect the same and include (among others) the Canna-Pod™, Locking Ring Canna-Pod™, Bud Pod™, Bud Goblet™, Sensory Pod™, and Canna-Detri Pod™ containers. [*Id.* at ¶ 25].

The Individual Defendants are members of SamDan LLC ("SamDan" or "Smokus Focus" and collectively with the Individual Defendants, "Defendants"), a South Carolina limited liability company operating under the name "Smokus Focus." [*Id.* at ¶¶ 4, 7]. SamDan has no known assets or permanent address. [*Id.* at ¶¶ 8, 9]. Despite filing a limited liability form in South Carolina, the Individual Defendants have failed to maintain even the minimum formalities required to maintain their limited liability company: because no current agent information is available for the entity in South Carolina or Colorado, SamDan's individual members had to be located and served on behalf of the entity. [*Id.* at ¶ 10]. Although Messrs. Whetsel and Einhorn make all

2

decisions relative to Smokus Focus and operate SamDan from Mr. Whetsel's Denver, Colorado apartment, SamDan is not registered as a foreign entity, has not filed Colorado tax returns, and has paid no Colorado taxes. [*Id.*].

Defendants make, use, and sell containers for personal cannabis use, including their first product—"stash jars"—designed to fit in an individual's pocket. [*Id.* at ¶ 26]. At least as early as January 2020, Defendants began to advertise, market, and sell their "JetPack" and "JetPack Infinity" containers to medicinal and recreational cannabis dispensaries. [*Id.* at ¶ 27]. These two products (the "JetPack containers") resemble the containers described by the Patent owned by All Plastic. [*Id.*]. Specifically, the JetPack containers appear nearly identical to the container shown in the Patent and are identical to the claim applicable to products with a container body, lid with a lens and scent openings, and plug, as set forth in the Patent. [*Id.* at ¶ 28]. Marketing material for the JetPack containers describe the products' "crystal clear magnification" and "built-in scent vent" permitting users to "smell what's inside while maintaining a 100% airtight seal." [*Id.* at ¶ 28].

By letter dated January 24, 2020 and directed to Mr. Whetsel at two addresses, All Plastic gave Defendants actual notice of its ownership of the Patent and the similarities between the Parties' products, and offered to discuss the possibility of licensing the Patent to Defendants. [*Id.* at ¶ 29; #17-1; #25-1].[1] Even after receiving such notice, Defendants continued to advertise,

---

[1] Courts take judicial notice and may consider documents on their own dockets on a motion to dismiss without converting it into a motion for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Tal v. Hogan*, 453 F.3d 1244, 1264–65 n.24 (10th Cir. 2006). Here, SamDan has attached Plaintiff's cease-and-desist letter to its Answer and First Amended Answer. [#17-1; #25-1]. Although considering documents attached to an answer ordinarily would require the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence, the court may take judicial notice of the contents of the cease-and-desist letter though it may not not accept the truth of matters asserted. *Tal*, 453 F.3d at 1265 n.24.

market, and sell their allegedly infringing products to medicinal and recreational cannabis dispensaries through distributors, Facebook, eBay, Amazon, trade and industry shows, and on their website at www.smokusfocus.com. [*Id.* at ¶¶ 11, 27, 30].

This action followed on May 8, 2020. *See* [#1]. All Plastic asserts a single cause of action, but multiple theories of patent infringement, i.e., by making, using, offering to sell, selling, importing, and exporting the JetPack containers, Defendants have thereby directly infringed, and have induced others to infringe, the Patent either literally or under the doctrine of equivalents pursuant to 35 U.S.C. § 271. *See* [#20 at ¶¶ 31–40]. And in light of Defendants' ongoing actions—notwithstanding receipt of actual notice of the Patent in late January 2020—All Plastic claims that Defendants have willfully, deliberately, and intentionally infringed one or more claims of the Patent. [*Id.*].

On July 17, 2020, SamDan filed its Answer [#17], and Messrs. Whetsel and Russell-Einhorn filed their First Motion to Dismiss [#19]. Their First Motion to Dismiss sought dismissal of Plaintiff's single patent infringement claim as asserted against the individual members of SamDan for failure to allege sufficient facts to demonstrate personal culpability or to pierce the corporate veil. *See generally* [*id.*]. On July 27, 2020, Plaintiff filed a First Amended Complaint for Patent Infringement and Demand for Jury Trial ("Amended Complaint") [#20], as a matter of right pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, thus mooting the first Motion to Dismiss. [#21; #27]. SamDan filed its First Amended Answer [#25] and the Individual Defendants filed the instant Second Motion to Dismiss on August 10, 2020 [#26]. Accordingly, that same day this court denied the Individual Defendants' First Motion to Dismiss as moot. [#27].

In the Second Motion to Dismiss, the Individual Defendants argue that the Amended Complaint makes no allegations as to their personal culpability and the "few perfunctory,

4

conclusory allegations" included in the Amended Complaint asserting that SamDan is their alter ego lack factual support. *See* [#26]. Plaintiff has responded [#37, filed August 31, 2020] and the Individual Defendants replied [#38, filed September 14, 2020]. Thus, the instant Second Motion to Dismiss is ripe for resolution.

## LEGAL STANDARD

### I.  Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (internal quotation marks omitted). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). When considering a 12(b)(6) motion, courts "must consider the complaint in its entirety as well as other sources courts ordinarily examine when ruling on 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007). A court "may consider in addition to the complaint, documents incorporated by reference into the

5

complaint . . . and documents plaintiff[] relied upon in bringing suit," *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013), and may take judicial notice of appropriate documents and facts.  Fed. R. Evid. 201.

## ANALYSIS

The Individual Defendants seek to dismiss the claim against them individually for failure to state a claim because they contend that All Plastic has failed to allege specific facts to support the individual liability of either Messrs. Whetsel or Russell-Einhorn.  [#26].

The Individual Defendants argue that most of Plaintiff's allegations constitute bare legal conclusions. [#26 at 8–9 (citing [#20 at ¶ 10 ("[T]here existed a unity of interest in ownership between Smokus Focus, on one hand, and Defendants Whetsel and Russell-Einhorn, on the other hand, such that individuality and separateness between them ceased and that Smokus Focus is the alter ego of Whetsel and Russell-Einhorn."); ¶ 11 ("Adherence to the legal fiction of the Smokus Focus entity would result in fraud, promote injustice, and/or lead to an evasion of legal obligations for Whetsel and Russell-Einhorn."); ¶ 12 ("An equitable result in this matter will only be achieved by disregarding the Smokus Focus entity.")])].  In addition, the Individual Defendants argue that the few factual allegations proffered in the Amended Complaint to support Plaintiff's legal conclusion that Smokus Focus is a sham entity "do not withstand serious scrutiny." [#26 at 9]. Specifically, the Individual Defendants challenge each of the examples set forth in Paragraph 10. [*Id.*].  First, they argue that examples "(a)" and "(b)" fail because, notwithstanding "scary-sounding words like 'dominated'" therein, Plaintiff offers no explanation or factual support for the allegations that SamDan is a "sham." [#26 at 9].  Second, the Individual Defendants argue that Plaintiff fails to allege under example "(c)" any specific unfiled tax returns or unsatisfied tax obligations, thus constituting "bald speculation" that is "devoid of any specific factual

6

underpinnings." [#26 at 10]. Finally, they argue that examples "(d)" and "(e)"—which set forth allegations that Smokus Focus is "inadequately capitalized" and "a total sham and fiction"—are merely "vague guesswork without any specific factual support."[2] [*Id.*].

## I. Applicable Law

"'A procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive control by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction.'" *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (quoting *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part)) (further citations, brackets, and quotation marks omitted). But the United States Court of Appeals for the Federal Circuit ("Federal Circuit") has also explained that, in matters of procedure, it "'will apply the law of the regional circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law.'" *Id.* (quoting *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004)).

Here, Plaintiff asserts that piercing the corporate veil to hold the Individual Defendants liable for patent infringement is an appropriate remedy. *See generally* [#20]. The Federal Circuit recognized that it "ha[s] held that the doctrine of piercing the corporate veil involves 'general

---

[2] The Individual Defendants also argue that "[i]t is simply not the case that Smokus is a sham entity that fails to observe corporate formalities or file its taxes or pay its creditors." [#26 at 10]. The court cannot properly consider Individual Defendants' challenge to the *veracity* of Plaintiff's allegations in the context of the instant Motion to Dismiss. Indeed, the Individual Defendants implicitly concede the point when they state "given the nature of this motion, the veracity of these facts is not discussed here and will be dealt with . . . at the appropriate time." [*Id.* at 10 n.2]. The court declines to consider the truthfulness of Plaintiff's allegations at this juncture, and instead considers only their sufficiency under the standards set forth below.

7

principles,' that do not apply only to patent cases." *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1314 (Fed. Cir. 2010) (quoting *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986); and citing *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007) (noting that "the alter ego issue is not unique to patent law")). In *Wordtech*, the Federal Circuit held that the district court's "failure to instruct the jury was plainly erroneous because 'personal liability under § 271(a) . . . requires sufficient evidence to justify piercing the corporate veil.'" *Id.* at 1314–15 (quoting *Al–Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1331 (Fed. Cir. 1999)) (internal brackets omitted). Thus, in that case, the "[plaintiff] needed to prove either that [the entity] was not a valid corporation when [the officers] committed infringing acts on its behalf, <u>or that [the entity's] corporate veil should be disregarded under state law.</u>" *Wordtech*, 609 F.3d at 1314–15 (emphasis added).

## II.     Piercing the Corporate Veil

In determining whether a person is the alter ego of a company, federal courts look to applicable state law. *BASF Corp. v. Willowood, LLC*, 359 F. Supp. 3d 1018, 1025 (D. Colo. 2019) (state law governs whether alter ego relationship exists). In Colorado, courts have adopted the approach to corporate veil piercing set forth in the Restatement of Conflicts. *Echostar Satellite Corp. v. Ultraview Satellite, Inc.*, No. 01-cv-00739-JLK, 2009 WL 1011204, at *7 (D. Colo. Apr. 15, 2009). Under this approach, whether a corporate veil may be pierced is governed by the law of the defendant company's state of incorporation. *Jones v. Marquis Props. LLC*, 212 F. Supp. 3d 1010, 1021 (D. Colo. 2016); *see also* Restatement (Second) of Conflicts § 307. Because the defendant company in this case is incorporated in South Carolina, that state's law governs this court's analysis of the sufficiency of Plaintiff's alter ego claims.

Under South Carolina law, the party seeking to pierce the corporate veil must satisfy a two-part test. *Drury Dev. Corp. v. Found. Ins. Co.*, 668 S.E.2d 798, 801 (S.C. 2008). First, the court applies an eight-factor test identified in *Sturkie v. Sifly*, 313 S.E.2d 803, 318 (S.C. App. 1984), to analyze the relationship between the company and shareholder(s) and, more specifically, whether "corporate formalities" were observed. *Mid-South Mgt. Co. v. Sherwood Dev. Co.*, 649 S.E.2d 135, 140–41 (S.C. App. 2007) (citing *Sturkie*, 313 S.E.2d at 318). The *Sturkie* factors include:

> (1) whether the corporation was grossly undercapitalized; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation at the time; (5) siphoning of funds of the corporation by the dominant stockholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) the fact that the corporation was merely a façade for the operations of the dominant stockholder.

*Id.* at 140–41 (citing *Dumas v. InfoSafe Corp.*, 463 S.E.2d 641, 644 (S.C. App. 1995)). The South Carolina Supreme Court has noted that the "conclusion to disregard the corporate entity must involve a number of the eight factors, but need not involve them all." *Id.* (quoting *Dumas*, 463 S.E.2d. at 644). Second, the court considers whether "fundamental unfairness" or injustice would result to the plaintiff if the corporate veil is not pierced. *Drury Dev. Corp.*, 668 S.E.2d at 800 (citing *Dumas*, 463 S.E.2d at 644). *See also Tinian Sys., LLC v. Core Campus Columbia I*, *LLC*, 3:15-CV-1102-JFA, 2016 WL 11643846, at *2 (D.S.C. Oct. 31, 2016).

### A. The *Sturkie* Factors

The Individual Defendants argue that Plaintiff makes only conclusory allegations as to the first two factors, and makes no allegations at all relative to the six remaining factors courts must consider pursuant to South Carolina law. [#38 at 5]. At this juncture, the court considers all factual allegations as true, but must not consider conclusory allegations as support for piercing the corporate veil. *See Iqbal*, 556 U.S. at 680; *Vail Summit Resorts, Inc. v. Zip-Flyer, LLC*, No. 18-

9

cv-01763-MEH, 2020 WL 3469703, at *3 (D. Colo. June 25, 2020) (holding that the plaintiff plausibly pleaded remedy of piercing the corporate veil under Colorado law).

At the outset, this court notes and declines to consider Plaintiff's conclusory allegations set forth in the Amended Complaint regarding the *Sturkie* factors, *see, e.g.*, [#20 at ¶ 10 ("(a) Whetsel and Russell-Einhorn controlled, dominated, managed, and operated Smokus Focus as their alter ego; . . . ."); *id.* at ¶ 11 ("Adherence to the legal fiction of the Smokus Focus entity would result in fraud, promote injustice, and/or lead to an evasion of legal obligations for Whetsel and Russell-Einhorn.")], which are not entitled to the presumption of truth. Other allegations reflect sufficient factual detail to not be categorized as conclusory and must be considered as true for purposes of the instant Motion. *See, e.g.*, [#20 at ¶ 10(d) ("Smokus Focus was so inadequately capitalized as [sic] has so few assets it is not able to pay its debt or obligations; . . . .); *id.* at ¶ 10(b) ("Whetsel and Russell-Einhorn make all decisions pertaining to Smokus Focus; . . . .")]. Finally, Plaintiff does offer allegations that "are truly factual and go directly to supporting piercing the corporate veil," *Vail Summit Resorts*, 2020 WL 3469703, at *4. *See, e.g.*, [#20 at ¶ 10(c) (alleging the Smokus Focus entity's failure to maintain current agency information, register as a foreign corporation in Colorado, and file or pay taxes in Colorado); *id.* at ¶ 10(e) (alleging that Smokus Focus's address is a post office box, and the limited liability company operates from the homes of the Individual Defendants)].

***Corporate Formalities.*** As for the observance of corporate formalities, Plaintiff alleges the Defendants' failure to maintain current agency information, register as a foreign corporation in Smokus Focus's state of operation (Colorado), and file or pay taxes in Smokus Focus's state of operation (Colorado). [#20 at 4 ¶ 10]. The South Carolina Supreme Court has recognized that certain of the *Sturkie* factors—including the failure to observe corporate formalities—have less

importance in the context of statutory close corporations, given significant changes in basic South Carolina corporate law and federal and state tax law. *Hunting v. Elders*, 597 S.E.2d 803, 807 (S.C. App. 2004) ("The adoption of the statutory device allowing the creation of a statutory close corporation was designed to lessen the formalities necessary to maintain a corporation. A statutory close corporation may operate without a board of directors, need not adopt bylaws under certain circumstances, and need not hold an annual meeting unless pursuant to a shareholder request."). However, it is unclear whether the diminished importance of this factor in the context of statutory close corporations applies to the case at hand. And, in any event, the corporate formalities identified by the court in *Hunting* are not the same formalities alleged to be deficient in this case. *Compare id. with* [#20 at 4 ¶ 10 (alleging the Defendants' failure to maintain current agency information, register as a foreign corporation in Smokus Focus's state of operation, and file or pay taxes in Smokus Focus's state of operation)].

*Undercapitalization and Sham Entity.* South Carolina courts consider significant in this inquiry, "and particularly so in the case of the one-man or closely-held corporation," as is alleged here, "whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking," *Hunting*, 597 S.E.2d at 808 (quoting *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685 (4th Cir.)). Here, Plaintiff advances only a borderline conclusory allegation that "Smokus Focus was so inadequately capitalized as [sic] has so few assets it is not able to pay its debts and obligations." [#20 at ¶ 10(d)]. But the *Hunting* court also held, however, that "[t]he factors dealing with undercapitalization, siphoning of funds, and <u>whether the corporation was a façade for its dominant shareholder</u> are closely related." *Id.* at 808. And Plaintiff alleges that Messrs. Whetsel and Russell-Einhorn make all decisions pertaining to Smokus Focus. [#20 at ¶ 10]. Moreover, to support its assertion that Smokus Focus is a sham entity, Plaintiff

11

further alleges that Smokus Focus's address is a post office box, and the limited liability company operates from the homes of the Individual Defendants. [#20 at 4 ¶ 10]. Indeed, read in the light most favorable to Plaintiff, the allegations suggest that SamDan has no known assets or permanent address. [*Id.* at ¶¶ 8, 9].

In light of the foregoing allegations and because, "'the conclusion to disregard the corporate entity . . . need not involve all of these factors,'" *Dumas*, 463 S.E.2d at 643–44 (alteration omitted), this court concludes that Plaintiff has adequately pled facts sufficient to satisfy the first prong of the test to support piercing the corporate veil under South Carolina law. I turn now to consider whether Plaintiff has also pled the requisite "fundamental unfairness" to warrant piercing the corporate veil.

### B. Fundamental Unfairness

The Individual Defendants argue that even if Plaintiff can satisfy the first prong of the inquiry, there is no factual basis for Plaintiff to allege that Smokus Focus's corporate structure somehow results in fundamental unfairness. [#38 at 5].

The "fundamental unfairness" prong of the test is "[t]he heart of a piercing the corporate veil dispute," *Mid-South Mgmt. Co.*, 649 S.E.2d. at 141, and the essence of this prong is that "an individual businessman cannot be allowed to hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell," *Drury*, 668 S.E.2d at 801. At the pleading stage, a plaintiff must allege facts sufficient to "'establish that (1) the defendant was aware of the plaintiff's claim against the corporation, and (2) thereafter, the defendant acted in a self-serving manner with regard to the property of the corporation and in disregard of the plaintiff's claim in the property.'" *Mid-South Mgmt. Co.*, 649 S.E.2d. at 141 (quoting *Dumas*, 463 S.E.2d at 644).

The entirety of the Individual Defendants' argument on Reply as to the second prong of the inquiry is a restatement of the relevant question—i.e., whether they "'acted in a self-serving manner with regard to the property of the corporation and in disregard of the plaintiff's claim in the property,'" [*id.* (quoting *Mid-South Mgt.*, 649 S.E.2d at 141)]—followed by their assertion that "All Plastic can offer no such allegations of such self-serving conduct (because none exist)," [*id.*]. But contrary to Defendants' assertion, the Amended Complaint alleges that, by letter dated January 24, 2020, All Plastic gave the Defendants actual notice of its ownership of the Patent and the similarities between the Parties' products, and offered to discuss the possibility of licensing the Patent to Defendants. [#20 at ¶ 29]. SamDan admits in its First Amended Answer that it received the January 24 letter on January 24, 2020. [#25 at ¶ 29]. This court further takes judicial notice that the cease-and-desist letter was addressed to Mr. Whetsel at two addresses, one in South Carolina and one in Colorado. [#25-1]. And though the January 24 letter is not specifically directed at Mr. Russell-Einhorn, the First Amended Answer concedes that it notified the "Defendant<u>s</u>," [#25 at ¶ 29] (emphasis added). The Amended Complaint further avers that even after receiving such notice, Defendants allegedly continued to advertise, market, and sell their allegedly infringing products to medicinal and recreational cannabis dispensaries through distributors, Facebook, eBay, Amazon, trade and industry shows, and on their website at www.smokusfocus.com. [#20 at ¶¶ 11, 27, 30]. This court finds that the foregoing allegations are sufficient such that piercing the corporate veil cannot be precluded as a matter of law at this juncture. *See Hunting*, 597 S.E.2d at 809 (affirming district court's decision to pierce corporate veil based on its finding that the defendant knew of the plaintiff's claim against the entity and acted in a self-serving and unfair manner by, *inter alia*, siphoning funds and transferring stocks from the entity).

### III.     Individual Defendants' Liability for Induced Patent Infringement

In responding to the Second Motion to Dismiss, Plaintiff argues in the alternative that, even if it is not permitted to pierce the corporate veil, Messrs. Whetsel and Russell-Einhorn can still be personally liable for induced patent infringement. [#37 at 9].

"Patent infringement is a tort," *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1365 (Fed. Cir. 2008) and "[i]n general, a corporate officer is personally liable for his tortious acts, just as any individual may be liable for a civil wrong." *Wordtech*, 609 F.3d at 1313.  While the corporate veil can shield officers from liability under § 271(a), "corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement regardless of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil," *Wordtech*, 609 F.3d at 1316.  Pursuant to § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). A claim for patent infringement on a theory of "inducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) (quotations and citations omitted).

In Reply, the Individual Defendants argue that "the Federal Circuit has squarely held that the officers of a corporation are not liable for a corporation's acts to induce patent infringement unless the corporate structure is a sham or the officer acted culpably, possessing the specific intent to aid and abet infringement." [#38 at 6 (citing *Hoover Grp. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1412 (Fed. Cir. 1996)) (emphasis omitted)].   Although the Individual Defendants correctly note Federal Circuit authority holding that "[i]t is an insufficient basis for personal liability that the officer had knowledge of the acts alleged to constitute infringement," *Hoover Grp.*, 84 F.3d at

14

1412, having found sufficient facts to avoid dismissal with respect to the piercing of the corporate veil, this court finds that those same allegations are sufficient to avoid dismissal with respect to induced patent infringement at this time. *See, e.g.*, [#20 at ¶¶ 11, 27, 29–30]. Taken as true, Plaintiff alleges facts to show that the Individual Defendants (1) knew of the '834 Patent; (2) knew that the accused products were identical to a patented embodiment of the '834 Patent and therefore infringed on the same; and (3) continued to sell the accused products to distributors and third-parties, despite knowledge of their infringing products and the '834 Patent. [#20 at ¶¶ 24–30, 34–35]. *Cf. Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553–54 (Fed. Cir. 1990) (reversing district court's decision to hold officers liable under § 271(b) because it was contrary to the district court's findings that the officers were not aware of the plaintiff's patent until suit was filed, and that the entity's subsequent infringing acts continued upon the officers' "good faith belief" based on advice of counsel that the entity's product did not infringe on the patent holder's rights).

In so finding, this court recognizes that these facts alone—even if substantiated—may be insufficient for a finding at summary judgment or at trial. But "Rule 12(b)(6) motions to dismiss are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint." *Tal v. Hogan*, 453 F.3d 1244, 1266 (10th Cir. 2006). Accordingly, the Individual Defendants' Second Motion to Dismiss is **DENIED**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)   The Individual Defendants' Motion to Dismiss [#26] is **DENIED**.


DATED: February 8, 2021                    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge