IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO

Civil Action No. 20-cv-01318-NYW

ALL PLASTIC, INC., a California corporation,
Plaintiff,

v.

SAMDAN LLC, d/b/a SMOKUS FOCUS, a South Carolina limited liability company, SAMUEL WHETSEL, an individual and in his capacity as a member of SamDan LLC, and DANIEL RUSSELL-EINHORN, an individual and in his capacity as a member of SamDan LLC,

Defendants.

**DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF**

Defendants submit this opening claim construction brief with respect to seven[1] terms in the claims of the patent asserted in this action, U.S. Patent Number 10,384,834, issued August 20, 2019, to Smith et al. (`834 or `834 patent). The terms were set forth in Parties' Joint Disputed Claim Terms Chart, ECF 68. These terms are found in independent claims 1 and 11 and in dependent claims 2, 12, 3, 13, 6, and 16, which are the only claims asserted by Plaintiff in its infringement contention.

This brief is filed contemporaneously with the declaration of counsel, attached as Exhibit H, which sets forth the relevant patent documents for the Court's convenience.

## I.    SUMMARY OF THE INVENTION

The `834 patent defines the invention as a "container for providing aromatic sampling and visualization of contents." Ex. A at Title (`834 patent). According to the patent, the container, which is "for displaying, visualizing, and aroma sampling botanical material" is an

---

[1] Parties had designated eight terms for construction in ECF 68, including Term 4, "a removable soft plug." Given Defendants' space limitations in this brief and Plaintiff's desire not to construe this term, it is being omitted.

Defendants' Opening Claim Construction Brief - 1

improvement over the prior art because it enables "adequate storage, preservation, and presentation" of botanical samples. Ex. A at cols. 1: 24-29, 33-37. It provides for "stabilization and magnification of a portion of a sample" and allows customers to inspect the samples for "freshness" and "aroma," and to preserves and stores the botanical samples. *Id.* The inadequacies of prior art containers are thus purportedly remedied by the aspects of the `834 invention. *Id.*

To achieve these purposes, the `834 invention discloses a container with a body (10) and a lid (60) which seal together to form a chamber (110) where botanical samples are placed for storage and viewing. *E.g.* Ex. A at Fig. 1. The container body (10) is shaped in such a way to define an open top (25) with a perimetrical ridge (50) surrounding said open top. Ex. A at col. 2:36-42.



FIG. 1

The perimetrical ridge (75) at the open top (25) is mated with a perimeter (75) of the lid (60) to create an airtight seal. Ex. A at col. 2:45-46. After they are mated together, by fitting the lid over the container body, the lid and the body define chamber (110) inside the container. *Id.*; *see also* col. 3:7-10. The botanical sample is preserved and presented in this chamber. Ex. A at cols. 2:42-49, 3:51-52.

Defendants' Opening Claim Construction Brief - 2

In operation, the lid is placed on the container body such that the perimeter (75) snugly fits over the perimetrical ridge (50) of the container body to fasten the lid and the body and to create an airtight chamber (110) inside. Ex. A at cols. 3:58-62 ("Lid 60 engages perimetrical ridge 50 container body 10 fastening lid 60 and container body 10 together to form chamber 110."); *see also* 3:7-114:41-43, 4:56-58. The edge of the lid, perimeter (75), slides over the surface of the raised portion of the perimetrical ridge (50) while the outer-most part, or terminus, of the perimeter seals against the flat portion (shoulder) of the perimetrical ridge. The contact between these surfaces creates the seal between a region of the lid, the perimeter, and a region of the container body, the perimetrical ridge. In this manner, the lid and body are fastened together and chamber (110) is made airtight. *Id.*; *see also* 4:41-43 (explaining that the lid fits "snugly on container body 1410 forming an airtight seal, defining chamber 1411"). Figures 8 and 14 show the intended fit of the lid and the container body.



According to the `834 patent, chamber (110) must thus be airtight because it is where the botanical sample is preserved. Such is required by each claim. *E.g.* Ex. A at claims 1 and 11. To that end, each potential boundary between the chamber and the outside of the container is also sealed. *Id.* (requiring that the scent holes, the seam of the lens in the lid, and the lid all be airtight). Even more, the perimeter of the lid is specifically shaped to create the snug contact all around the open top of the container body.

Defendants' Opening Claim Construction Brief - 3

> For any given container body shape, the perimeter of the lid will correspond to the perimetrical ridge of the container body, such that the lid is fitted on the perimetrical ridge of said container body forming a chamber.

Ex. A at col. 7:4-8. This structure is mandatory for every embodiment of the invention as stated in the specification. Ex. A at col. 6:53-67 ("All container bodies described herein are shaped to define a perimetric ridge surrounding the open top. . . . All lids described herein . . . are shaped to define a perimeter . . .."). It is mandatory because it forms the airtight chamber necessary to achieve the purpose of "adequate storage" and "preservation." *See* Ex. A at col. 24-29. The objects and benefits of the `834 patent are realized through this structure for creating a sealed chamber, and not some other structure such as a wire-bail seal, a gasket-type seal, a screw-top lid, or another type of coupling.

Other objects of the invention include "visualizing" and "aroma sampling." *See* Ex. A at col. 1:34. To achieve them, the container includes a viewing opening (85) with a magnifying plano-convex lens (100) and scent openings (95). Ex. A at cols. 2:54-57, 2:64-3:6.

The `834 patent includes two independent claims, 1 and 11. Each of those claims requires at least (1) a container body shaped to define a perimetrical ridge on which a lid is fitted, (2) a lid shaped to define a perimeter, (3) a lens affixed to the lid to cover the viewing opening and form an airtight seal, (4) scent openings in the lid, (5) a removable soft plug to cover the scent openings to form an airtight seal, and (6) the fit of the lid and the container body completely "sealing" the chamber of the container. *See generally* Ex. A at claims 1 and 11.

The claim limitations which are directed to the perimetrical ridge, the lid, and the fit of the lid and container body recite the structure which achieve the seal required for the airtight chamber. Those limitations are reflected in Terms 1, 2, and 5. Therefore, those three terms are discussed together in the briefing below.

## II. PROSECUTION HISTORY OF THE `834 PATENT

The `834 patent was filed with 20 total claims and claims 1 and 11 being independent. In the first office action on the merits, all of the claims were rejected as being obvious over US PGPub 2016/0031605 to Bean and US Patent 4,230,231 to Burnett. Ex. C at pp. 4-8 (`834 Electronic File Wrapper at Detailed Action dated January 24, 2018); *see also* Ex. B (the entire `834 Electronic File Wrapper); Ex. G (Bean reference). The rejection stated that Bean disclosed every feature of the claims except for a removal soft plug. *Id.* Burnett was relied upon for the soft plug. The Examiner stated that Bean disclosed a lens at (116). Ex. C at p. 4.

In response to the rejection, the patent owners argued that Bean failed to teach or suggest the claimed lens because Bean's disclosure was insufficient and not enabled as to the lens. Ex. D. In response to the patent owner's arguments, the examiner withdrew her rejection and indicated all claims as allowable in view of the prior art. *See* Ex. B.

The `834 patent was filed as a continuation in part of US Patent Application 9,630,747 (`747) which was also directed to a container for providing aromatic sampling and visualization. Ex. A at cover page. Before allowing the `747 patent, the examiner stated that the "[c]losest prior art - Bean et al. (US PG Pub 2016/0031605) in view of Schofield (US PG Pub 2007/0051826) and further in view of Burnett et al. (US PN 4230231) - teaches a majority of the limitations of the claimed invention." Ex. F at Reasons for Allowance (`747 Electronic File Wrapper, Notice of Allowance dated December 22, 2016, Examiner's Amendment); *see also* Ex. E (the entire `747 file wrapper). The examiner allowed the `747 claims based on the features of a mounting projection, inter alia. *Id.*

## III. LEGAL FRAMEWORK

The first step of any infringement analysis is determining the scope and meaning of each

asserted patent claim by construing it. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). This determination is a question of law. *Id.* at 979.

Construing a claims is determining the ordinary and customary meaning of the claim, in the context of the entire patent, as understood by a person of ordinary skill in the relevant art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).

When the meaning of a claim term would not be readily apparent, *Phillips* directs the courts to a hierarchy of sources to aid it. *Flexi-Mat Corp. v. Dallas Mfg. Co.*, No. CIV.A. 04-10162-DPW, 2006 WL 962161, at *1, *3 (D. Mass. Apr. 11, 2006). The claims and the specification—intrinsic evidence—provide the best guidance. *Id.*; *see also Phillips*, 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.").

Extrinsic evidence, such as dictionary definitions, may be helpful in explaining the common meaning of terms but should not be elevated in significance or impact above the intrinsic evidence. *Phillips*, 415 F.3d at 1322.

Claim terms must always be interpretated to be true to what the inventors actually invented. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1313. The close kinship between a claim and its specification is imposed by the statutory mandate that the specification describe the claimed invention in full, clear, concise, and exact terms. *Phillips*, 415 F.3d at 1316; *see also* 35 U.S.C. § 112.

### IV. ARGUMENTS

Plaintiff posits that none of the claim terms require construction. ECF 68. In so arguing, the Plaintiff is impermissibly divorcing the claim scope from the context of the disclosure.

Defendants' Opening Claim Construction Brief - 6

Determining the claim scope in the abstract and divorced from the context of the disclosure conflicts with the statutory mandate of the written description requirement and is not allowed. *See* 35 U.S.C. § 112(a); *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."). Plaintiff's approach ignores the problems of the prior art and the `834 patent's tailored solution to it. It therefore ignores the purpose and object of the invention. In doing so, it promotes a scope beyond that to which the patent owner is entitled. A patentee is not entitled to capture subject matter that is not in accord with the scope of the invention through claim constructions. *See Alloc Inc. v. ITC*, 342 F.3d 1361, 1370 (Fed. Cir. 2003).

### A. <u>Term 1 must be construed and it must mean that the perimetrical ridge of the body is integrally formed as a raised strip adjacent a shoulder which surrounds the open top.</u>

Both independent claims require that the body is shaped to define a perimetrical ridge surrounding the open top. Claim 1 states, "said container body is shaped to define a perimetrical ridge surrounding said open top." Claim 11 does not expressly state this language but requires that the lid is fitted "on a perimetrical ridge of said container body." Moreover, the specification mandates that "[a]ll container bodies described herein are shaped to define a perimetrical ridge surrounding the open top." Ex. A at col. 6:55-57. Accordingly, both independent claims require that the container body is shaped to define a perimetrical ridge surrounding the open top—claim 1 expressly and claim 11 impliedly.

Parties' construction for Term 1 was forth in the Parties' Joint Disputed Claim Terms Chart. ECF 68. Parties timely exchanged constructions according to the scheduling order. ECF 46. At that point, Plaintiff asserted that no construction was necessary. Defendants invited

Defendants' Opening Claim Construction Brief - 7

Plaintiff to discuss the parties respective constructions, but no discussion occurred. On the deadline to file the joint claim terms chart, Plaintiff transmitted to Defendants its edits to the joint filing, ECF 68, and for the first time presented the alternative construction seen in the chart below. In view of the alternative construction, Defendants have revised their construction to change "forms a raised portion and shoulder, at the perimeter" to "forms a raised strip adjacent a shoulder, on the perimeter" to better harmonize with Plaintiff's constructions. These changes are shown in red-line. The arguments below are made with respect to Defendants' revised construction, but they apply equally to the originally proposed constructions as well.

**Term 1** (ECF 68)

| | | |
|---|---|---|
| *said container body is shaped to define a perimetrical ridge surrounding said open top* | Defendants' Construction: the surface of the container body integrally forms a raised <u>strip adjacent a</u> <s>portion and</s> shoulder, <s>at</s> <u>on</u> the perimeter of the container body, that encircle the open top | Plaintiff's Construction: no construction necessary<br><br>Alternatively: *said container body is shaped to define a elevated structure or raised strip on the container body surrounding said open top* |

   1. *Term 1 must be construed because its meaning is not readily apparent and its scope must be clarified.*

"The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed." *Quality Innovative Prod., LLC v. Brand 44, LLC*, No. 18-CV-00369-NYW, 2019 WL 632295, at *2–3 (D. Colo. Feb. 14, 2019) (citing to *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008)). The Court must construe terms when there is an actual dispute regarding the proper scope of the claims. *Id.* The Court must also construe a term whose meaning is not readily apparent. *Flexi-Mat Corp.*, 2006 WL 962161, at *3.

Term 1 is in dispute and its meaning is not readily apparent in the context of the `834 patent for at least two reasons. The scope of perimetrical ridge is unclear and the import of the phrase "shaped to define" must be determined. The `834 patent uses the term ridge in combination with the term perimetrical to describe a structure on a container that creates a seal. To determine what exactly is meant by the perimetrical ridge, it must be construed. Additionally, the claims state that the container body is "shaped to define" the ridge instead of plainly stating that it "has" or "includes" a ridge, thereby call into question the precise meaning of "shaped to define" as compared with "has" or "includes." Therefore, a construction for Term 1 is required.

Plaintiff argue that Term 1 does not require construction because "ridge" is well-defined by the dictionary. As a matter of principle, the existence of a dictionary definition is neither determinative of whether a term should be construed nor what that construction should be. *See Phillips*, 415 F.3d at 1321. Moreover, here, Plaintiff's dictionary-based definition of "elevated structure" or "raised portion" does not resolve the ambiguity arising from the inherent relativity associated with the terms" elevated" or "raised." An elevated or raised portion is higher than some reference height. That is, being elevated or raised is relative to a lower portion. This relativity is important to the issues at hand. A construction of this term is thus necessary.

### 2. An integrally formed raised strip adjacent a shoulder, that encircle the open top, are required to achieve the objects of the invention.

"[I]t is fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention*." Phillips*, 415 F.3d at 1316 (quoting from *United States v. Adams*, 383 U.S. 39, 49 (1966)). A claim term must be construed "with a full understanding of what the inventors actually invented and intended to envelop with the claim" and it must remain "true to the claim language and most naturally aligns with the

Defendants' Opening Claim Construction Brief - 9

patent's description of the invention." *Id.* Because the patentee is required to "define precisely what his invention is," it is "unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms." *Id.* at 1312 (quoting from *White v. Dunbar*, 119 U.S. 47, 52 (1886)).

Defendants' construction springs from the intrinsic evidence and begins with the words of the claims. Claims 1 and 11 require that the perimetrical ridge is formed on the container body where the "lid is fitted" on it to create a chamber that is sealed. Ex. A at claims 1 and 11. The fit between the parametrical ridge and the lid creates the sealed chamber. This sealed chamber is necessary to achieve the object of the invention which is to provide adequate storage and preservation. Ex. A at col. 1:26-29. Therefore, the perimetrical ridge must be construed to have a structure which achieves this object.



The structure for the perimetrical ridge is shown in, for example, in Figure 4. The specification describes the parametrical ridge by stating that the "[c]ontainer body 10 is further shaped to define a perimetrical ridge 50 surrounding said open top 25." Ex. A at col. 2:40-42, Fig. 10. The specification explains that the "[l]id 60 is fitted on the perimetrical ridge 50 of said container body 10 forming an airtight chamber 110" as illustrated in Figure 8. Ex. A at col. 3:8-

10. The lid and the body must connect in an airtight manner and so the lid "fits snugly on container body." Ex. A at cols. 4:42-44, 56-58. All embodiments of the invention must have a "parametrical ridge" that "surrounds the open top" and the "perimeter of the lid will correspond to the perimetrical ridge of the container body, such that the lid is fitted on the perimetrical ridge of the container body forming a chamber." Ex. A at cols. 6:53-57, 7:4-7.

Moreover, the claims require that the perimetrical ridge is formed on the container body. Therefore, the claims require that something is formed—something more than a mere rim or top edge of the container which is an inherent feature of any vessel. The language of the claims requires something more than the mere geometric boundary: it require a structure surrounding the open top which achieves the sealing limitation as recited in the claims. As such, the container body being "shaped to define" should be construed to mean "integrally forms" consistent with the intrinsic evidence.

The "parametrical ridge" must be construed to be the raised portion adjacent a flat portion, or shoulder, at the edge or perimeter of the body that creates the required seal. Nothing else is enabled or described as the invention. The parametrical ridge must additionally surround the open top because the specification limits the invention to the same. Accordingly, the entirety of Term 1 is properly construed to be "the surface of the container body integrally forms a raised strip adjacent a shoulder, on the perimeter of the container body, that encircle the open top."

Plaintiff's alternative construction should be denied because it relies on the extrinsic evidence of a dictionary as its primary source to the exclusion of the meaning which the specification expresses to one of ordinary skill in the art. *See Phillips*, 415 F.3d at 1321.

    **B.**  **<u>Term 2 must be construed as suggested by Defendants to clarify the scope of the claim and to define a structure for the term perimeter.</u>**

**Term 2** (ECF 68)

Defendants' Opening Claim Construction Brief - 11

| | | |
|---|---|---|
| *said lid is shaped to define a perimeter* | Defendants' Construction: the surface of the lid integrally forms an edge, which conforms to the raised portion and shoulder, | Plaintiff's Construction: no construction necessary |

Term 2 requires construction to clarify the scope of the claims for the same reasons as expressed above with respect to Term 1. Consistent with Term 1, "shaped to define" should be construed as "integrally forms."

Claims 1 and 11 expressly recite that the lid is shaped to define a perimeter. As such, the perimeter is a tangible thing and not, as commonly understood, an intangible geometric concept. The specification "provide[s] the best guide as to the meaning of a disputed term." *Quality Innovative Prod., LLC v. Brand 44, LLC*, No. 18-CV-00369-NYW, 2019 WL 632295, at *2–3 (D. Colo. Feb. 14, 2019) (internal quotations omitted); *see also Brain Synergy Inst., LLC v. Ultrathera Techs., Inc.*, No. 13-CV-01471-CMA-BNB, 2016 WL 106489, at *2 (D. Colo. Jan. 11, 2016). Looking to the specification, the perimeter is identified as (75) and is the edge of the lid. *E.g.* Fig. 1. The role of perimeter (75) in the invention is evident in comparison of Figures 10 and 8 which show the mating of the lid with the container body.



Figure 8 shows the lid and the container fitted together, and the specification requires that the perimeter of the lid "correspond to the perimetrical ridge of the container body, such that the

lid is fitted on the perimetrical ridge of said container body to form a chamber." Ex. A at col. 7:4-7. The perimeter, which is the edge of the lid, is formed in this way so that, when the lid and the body are mated, the edge of the lid "fits snugly" against the parametrical ridge on the container body to seal the chamber which is created between the lid and the body. *E.g.* Ex. A at col. 4: 41-44. This fit can be seen in all contemplated embodiment of the invention. *E.g. Id.* at Figs. 12, 14, and 16.



The snug fit between the perimeter and the perimetrical ridge is required by claim 1 and by claim 11 to fulfill the purpose of the invention. *See id.* at col. 1: 26-29. Consistently, both claims 1 and 11 require that the "lid is fitted to the parametrical ridge of said container body forming a chamber." *Id.* at claims 1 and 11. Thus, Term 2 should be construed as "the surface of the lid integrally forms an edge, which conforms to the raised portion and shoulder." This construction is harmonious with the operation of the invention:

> Lid 60 engages perimetrical ridge 50 [of] container body 10 fastening lid 60 and container body 10 together to form chamber 110.

Ex. A at col. 3:58-62.

    C.    <u>**Term 5 must be construed to give effect to the object of the invention in view of the constructions of Terms 1 and 2.**</u>

**Term 5** (ECF 68)

| *said lid is fitted on the perimetrical ridge forming a chamber* | Defendants' Construction: the lid is placed on the raised portion and shoulder such that its edge snugly fits | Plaintiff's Construction: no construction necessary |
|---|---|---|

|  | over the raised portion and shoulder to form a sealed chamber |  |

Term 5 explains the relationship between Terms 1 and 2, thus the constructions of Terms 1, 2, and 5 must be in accord. *See Phillips*, 415 F.3d at 1312. As shown and cited to above, the disclosure of the `834 patent describes the invention as the lid fitting on the container body so that the edge of the lid engages the perimetrical ridge and fastens the lid and container body together to form the sealed chamber. Ex. A at col. 3:58-62. Again, the lid must "fit snugly" on the container body. *E.g. id.* at col. 4:41-43.

The teachings of the `834 patent lead one of ordinary skill to understand the phrase "said lid is fitted on the perimetrical ridge" to mean that "the lid is placed on the [perimetrical ridge] such that its [perimeter] snugly fits over the [perimetrical ridge]." Replacing the proposed constructions for perimetrical ridge and perimeter results in Defendants' suggested construction for Term 5.

### D. Term 3 must be construed to require a plano-convex lens based on the patent owners' narrowing of their claim during prosecution.

**Term 3** (ECF 68)

| *a lens affixed to the lid* | Defendants' Construction: a planoconvex lens attached to the lid | Plaintiff's Construction: no construction necessary<br><br>Alternatively: a *magnification lens* attached to the lid |
|---|---|---|

Claim terms must also be "interpreted in light of the proceedings before the Patent and Trademark Office." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 723 (2002). Prosecution history estoppel prevents a patentee from recapturing subject matter surrendered during prosecution to obtain a patent." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 480 F.3d 1335, 1341 (Fed. Cir. 2007) (citing *Festo,* 535 U.S. 722).

Defendants' Opening Claim Construction Brief - 14

During prosecution of the `834, the patent examiner did not believe the original claims to be allowable. Ex. C at p. 4. The examiner rejected the claims over Bean stating that Bean comprises a "a lens (116) affixed to the lid to cover said viewing opening on said lid." *Id.*

The disclosure of Bean describes a lid with a magnifying lens, " The first embodiment locking sample case 100 has at least one top window 116 of transparent material in the cover 102. Ex. G at ¶ [0022]. In the first embodiment 100, a portion of the transparent material in the top window 116 is shaped so that it acts as a magnifying lens. *Id.* at ¶¶ [0022], [0034]. This allows a potential customer to view a magnified image of the sample material 114 and see small details that would not be as easily distinguished with the naked eye." *Id.* Claim 11 of Bean states that the window comprises a magnifying lens. *Id.* at claim 1. Thus, Bean expressly discloses a magnifying lens. *E.g. id.* at Fig. 1.



Despite the express teaching of a magnifying lens in Bean, the patent owners argued that the rejection was improper because Bean does not teach a lens. They argued that claim 1 required "a dedicated high-quality lens" and that Bean did not teach one because it did not enable a lens as claimed. Ex. D at pp. 8-9.

> Bean describes a 'window' 116 which may or may not be shaped to act as a magnifying lens [paragraphs 0022 and 0034]. Bean fails to teach a lens affixed as required by Applicant's Claim 1. Moreover, Bean's window 116 is not enabled. * * *

Defendants' Opening Claim Construction Brief - 15

> There are no examples given, no manufacturing guidelines as to how to produce a window with part magnification in the field of optics. Is the window convex? Is it concave? Bioconvex? What is the optical power? How is the window shaped? Where is the focal point? Which portions of the window magnify? Is it converging or diverging what is the radius of the lens?"

*Id.* at p. 9. The patent owners state that claim 1 requires a "dedicated high-quality lens." *Id.*

As expressly stated in the Bean specification and claims, Bean discloses a "lens" and a "magnification lens." *E.g.* Ex. G at ¶ [0022]. Therefore, the construction for Term 3 can neither be lens nor magnification lens because both are expressly taught by Bean. Instead, Term 3 should be limited to what the patent owners argued distinguishes their invention over Bean. That is, Term 3 must be construed to be the dedicated high-quality lens with a particular curvature, optical power, shape, and so on, as argued by the patent owners.

The only such lens as contemplated by the `834 patent is "a plano-convex lens such as a "Lens #90-1235 manufactured by J.P. Manufacturing which can be "a 1x, 2x, 3x, magnifier." Ex. A col. 3:1-6.[2] Based on admissions that the patent owners made to obtain their patent, Term 3 should be construed to require a plano-convex lens.

### E.     *<u>Term 6 must be construed to determine where the plug and lid are sealed.</u>*

**Term 6** (ECF 68)

| said plug forms an airtight seal between said plug and said lid completely sealing said chamber | Defendants' Construction: the plug forms an airtight seal between the plug and the lid to seal off the scent openings | Plaintiff's Construction: no construction necessary |
|---|---|---|

---

[2] The `834 specification discloses an alternative embodiment in which the viewing window is not a magnifying lens. But since this embodiment is not claimed, it is subject to the disclosure-dedication doctrine and is not within the enforceable scope of the claims. *See Eagle Pharma, Inc. v. Slayback Pharma LLC*, 382 F. Supp. 3d 341, 344 (D. Del. 2019).

The claim term "*said plug forms an airtight seal between said plug and said lid completely sealing said chamber*" is erroneously phrased. The seal formed between the plug and the lid is wholly contained on the surface of the lid and is incapable of sealing the chamber as claimed. Claims should be construed to sustain their validity when it can be done consistently with the language employed by the patent. *Klein v. Russell*, 86 U.S. 433, 434 (1873); *see also Phillips*, 415 F.3d at 1327 (citing to *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999)).

The `834 specification and drawings clearly demonstrate that the plug seals the scent openings—not the chamber. *See supra explanation re Terms 1,2, and 5.* The scent openings (95) are located in area (90) on the lid. Ex. A at col. 2:55-57. These openings must be blocked by removable plug (105) to seal the lid so that the chamber (110) remains airtight when the lid is fitted over the body. *Id.* at col. 2:59-60.



The specification provides the following explanations of how the plug seals the scent openings:

- "[S]aid plug 105 forms an airtight seal between plug 105 and recessed area 90 of said lid 6 [where the openings 95 are formed] completely sealing chamber 110." Ex. A at col. 3:9-11.

- "Plug 105 is inserted within recessed area 90 to seal the plurality of scent openings 95 to make chamber 110 airtight." *Id.* at col. 3:60-62.

- "Plug 105, illustrated by FIGS. 1, 8, and 10, is inserted within recessed area 1290 to seal

Defendants' Opening Claim Construction Brief - 17

the plurality of scent openings 1295 to make chamber 1211 airtight." *Id.* at cols. 4:43-46, 4:58-61.

- "The plug forms an airtight seal between said plug and said lid completely sealing a chamber of any shaped described herein." *Id.* at col. 7:7-9.

These explicit explanations instruct a person of ordinary skill that the plug seals off the scent openings.

**F.    Term 7 must require that the claimed tether be attached at the bottom with a fastener, consistent with the scope of the disclosure.**

**Term 7** (ECF 68)

| *tether affixed to the container body* | Defendants' Construction: tether attached to the bottom of the container body with a fastener | Plaintiff's Construction: no construction necessary |
|---|---|---|

In construing the claims in light of the specification, limitations from the specification should not be imported into the claims. *Phillips*, 415 F.3d 1323. The context of the specification will make it clear whether patentee is merely setting forth non-limiting examples to accomplish its goals, or whether the patentee instead intends for the claims and embodiments to be strictly coextensive. *Id.* Where there is nothing in the context of the specification to indicate that the patentee contemplated alternatives, the construction of the term is so limited. *Id.* (citing to *Snow v. Lake Shore & M S R Co*, 121 U.S. 617, 630 (1887)).

In the `834, the tether is always attached with a fastener to the bottom of the body. Ex. A at Figs. 1 and 10-11. The specification describes the tether as optional. *E.g. id.* at col. 6:51-52. But the optionality is regarding whether to include a tether or not. In every instance where a tether is contemplated, it is attached to the bottom of the container with a fastener. *E.g. id.* at cols. 3:26-35, 64-67, 4:1-3. The tether is attached in this way to permit the container to be carried by the tether but then also rest on a flat surface with the tether attached. *Id.* at col. 3:32-34.

Defendants' Opening Claim Construction Brief - 18

Because the claims are construed to state the legal scope of the invention as described in the specification, Term 7 must be commensurately construed to require attachment to the bottom of the container body with a fastener. *See Laser Tech., Inc. v. Nikon, Inc.*, 215 F. Supp. 2d 1135, 1144 (D. Colo. 2002); *see also Netword, LLC v. Central Corp.*, 242 F.3d 1347, 1352-3 (Fed. Cir. 2001) (explaining that the claims are limited to the invention which is described by the specification and that the legal scope of a claim is based on the description present in the specification).

## G. Term 8 must be limited consistent with the scope of the disclosure to mean that the container body is made from poly(methylmethacrylate).

**Term 8** (ECF 68)

| *the lid and said container body are comprised of poly(methylmethacrylate)* | Defendants' Construction: the lid and container body are substantially composed of poly(methylmethacrylate) | Plaintiff's Construction: no construction necessary |
|---|---|---|

As explained above, a claim term cannot encompass more than what the specification adequately describes. *Id.* The claims use the phrase "comprising" to describe the composition of the invention. It is a long-standing rule that comprising is an open-ended transition phrase and the ensuing elements are not limited. *CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007). But Term 8 cannot have a scope broader than that supported by the specification. There is but a single reference to the composition of the invention:

> Container body 10 and lid 60, and any container body and lid described herein, may be formed by injection molding and comprised of Poly(methyl methacrylate) (PMMA). Alternatively, container body 10 and lid 60 may be comprised of Styrene Acrylonitrile resin (SAN) or polycarbonate plastic. Container body 10 and lid 60 may be comprised of any moldable material. Container body 10 and lid 60 may be transparent, translucent or opaque-- depending on the specimen to be contained within.

Ex. A at col. 4:8-17. It is thus clear that the only configuration enabled, disclosed, or otherwise contemplated by the invention is that the body and lid be made from the same moldable material,

Defendants' Opening Claim Construction Brief - 19

such as poly(methylmethacrylate). While a number of different compositions are contemplated, the `834 never contemplates a container where the lid and the body are not made from substantially the same material. The products that Plaintiff identifies as practicing the patent also affirm this understanding.



https://www.budbardisplays.com. Therefore, the scope of Term 8 must be limited to configurations where the lid and body are both made from substantially the same material because nothing more was ever contemplated by the invention.

## V.   CONCLUSION

For the reasons articulated above, Terms 1-3 and 5-8 should be construed and the construction should be as proposed by the Defendants.

Respectfully submitted this 19th day of April 2021 by:

*s/* Kammie Cuneo
*Kammie Cuneo*
Thomas P. Howard
Aaron Hughes
THOMAS P. HOWARD LLC
842 W South Boulder Road, Suite #100
Louisville, Colorado 80027
Tel: (303) 665-9845
thoward@thowardlaw.com
ahughes@thowardlaw.com
kcuneo@thowardlaw.com

***Attorneys for Defendants***

Defendants' Opening Claim Construction Brief - 20